UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | | |
|---|---|---|
| PHILADELPHIA INDEMNITY INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Cause No.: |
| PREFERRED FAMILY HEALTHCARE, INC., | ) ) ) | **JURY TRIAL DEMANDED** |
| Defendant. | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Philadelphia Indemnity Insurance Company ("PIIC"), for its Complaint for Declaratory Judgment under 28 U.S.C. §§ 2200 and 2201 and Rule 57 of the Federal Rules of Civil Procedure, states:

### PARTIES, JURISDICTION, AND VENUE

1.      PIIC is a foreign insurance corporation organized and existing under the laws of the State of Pennsylvania, with its principal place of business in Pennsylvania, and which is authorized by the Missouri Department of Insurance to conduct business in the State of Missouri. For purposes of this Complaint for Declaratory Judgment based on diversity of citizenship, PIIC is a resident and citizen of Pennsylvania.

2.      Defendant Preferred Family Healthcare, Inc. ("PFH") is, and was at all relevant times referenced herein, a corporation organized and existing under the laws of the State of Missouri, with its principal place of business in the State of Missouri. For purposes of this

Complaint for Declaratory Judgment based on diversity of citizenship, PFH is a resident and citizen of the State of Missouri.

3.      This case and controversy involves citizens of different states.

4.      The amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

5.      This Court has diversity jurisdiction under 28 U.S.C. §1332(a)(1).

6.      Venue is proper in the Eastern District of Missouri under 28 U.S.C. § 1391(a) because Defendant is a citizen and resident of the State of Missouri, has its principal place of business in Adair County, Missouri, and a substantial amount of the events and occurrences giving rise to this action occurred in this District.

### GENERAL ALLEGATIONS

7.      PIIC brings this action seeking the interpretation of insurance policies described below and a declaration of its rights and obligations thereunder.

8.      Claims or purported claims have been brought against PFH, PFH officers, members of PFH's Board of Directors, and/or PFH employees arising out of various state and federal investigations into fraud, corruption, and other criminal activities allegedly perpetrated by PFH and others.

9.      PFH has demanded coverage from PIIC, claiming it is entitled to recover defense costs expended on behalf of PFH, its officers, directors, and employees to comply with and respond to various investigations. This action implicates PIIC insurance policies issued to PFH for the period from May 1, 2016 to May 1, 2018.

10.     While PIIC has accepted coverage for two of the claims made against PFH arising out of the various investigations, PIIC denies that it is responsible under its policies for the amount and scope of the defense costs requested by PFH for purposes of these two claims.

11.     Accordingly, an actual justiciable controversy exists between PIIC and PHC and litigation concerning this controversy is imminent and inevitable. The resolution of the matters raised in this Declaratory Judgment action will dispose of all issues and disputes between PIIC and PHC.

12.     All necessary and proper parties are before the Court for the matters in controversy.

13.     PIIC has no other adequate remedy at law.

### COUNT I
### DECLARATORY JUDGMENT ON DEFENSE COSTS ASSOCIATED WITH RESPECT TO CRIMINAL INVESTIGATIONS CONDUCTED BY THE UNITED STATES ATTORNEYS FOR ARKANSAS AND MISSOURI

14.     PIIC restates and incorporates by reference each and every allegation in the above paragraphs as if fully set forth herein Count I of PIIC's Complaint.

15.     PFH has sought to recover "defense costs" incurred as a result of investigations into PFH and others conducted by the United States Attorney's Office for the Western District of Arkansas and United States Attorney's Office for the Western District of Missouri which began sometime in 2014.

16.     However, there was no indication that any "claim" within the meaning of the PIIC policies was being made against PHC or its officers, directors, or employees with respect to these investigations until November 28, 2017 when PFH forwarded an October 26, 2017

letter from the United States Attorney's Office for the Western District of Missouri stating that it was investigating alleged federal criminal offenses committed by PFH and had found probable cause to believe that there was sufficient evidence to warrant the initiation of federal criminal charges against PFH.

17.    As such, PIIC has agreed to reimburse reasonable "defense costs" for the Missouri and Arkansas federal criminal investigations, and the resulting indictments, going forward from the November 28, 2017 notification date, within the parameters and limitations set by the applicable PIIC policy.

18.    However, PIIC has declined to reimburse PFH for any "defense costs" incurred as a result of these investigations before November 28, 2017, the date on which PIIC was first properly notified of a "claim" against a PIIC insured within the meaning of the PIIC policy.

### The Insurance Policy

19.    PIIC issued a commercial lines policy to PFH for the period from May 1, 2016 to May 1, 2017, under Policy No. PHSD1140827 (the "2016-2017 PFH Policy"). A true and accurate copy of the 2016-2017 PFH Policy is attached hereto as Exhibit 1 and incorporated as if fully set forth herein.

20.    The 2016-2017 PFH Policy contains the following relevant provisions:

### Part 1

Not-for-Profit Organization Directors & Liability Insurance

(To be read in conjunction with the Common Policy Definitions, Exclusion,
and Conditions Sections, Parts 6, 7, 8 below)

I.    INSURING AGREEMENTS

    A.    The **Underwriter** will pay on behalf of the **Individual Insured**, **Loss** from **Claims** made against **Individual Insureds** during the **Policy Period** (or, if applicable during the Extension Period), and reported to the **Underwriter** pursuant to the terms of this Policy, for **D&O Wrongful Acts**, except to the extent the **Organization** has indemnified the **Individual Insured** for such **Loss**.

    B.    The **Underwriter** will pay on behalf of the **Organization**, **Loss** from **Claims** made against **Individual Insureds** during the **Policy Period** (or, if applicable, during the Extension Period), and reported to the **Underwriter** pursuant to the terms of this Policy, for **D&O Wrongful Acts**, if the **Organization** has indemnified such **Individual Insureds** for such **Loss**.

    C.    The **Underwriter** will pay on behalf of the **Organization**, **Loss** from **Claims** made against the **Organization** during the **Policy Period** (or, if applicable, during the Extension Period), and reported to the **Underwriter** pursuant to the terms of this Policy, for a **D&O Wrongful Act**.

II.   DEFINITIONS

    A.    **D&O Wrongful Act** means any actual or alleged:

        1.    Act, error, omission, misstatement, misleading statement, neglect, breach of duty or Personal & Advertising Injury committed or attempted by an Individual Insured in his/her capacity as an Individual Insured; or by the Organization ….

**Part 6**

Common Policy Definitions

…

    D.    **Defense Costs** means:

> 1.    Any reasonable and necessary legal fees and expenses incurred in the defense of a Claim, whether by the Insured with the Underwriter's consent or directly by the Underwriter in the investigation, adjustment, defense and appeal of a Claim ….

The 2016-2017 Policy's Pro-Pak Elite Enhancement Missouri contains the following amended definition:

IV.    AMENDMENT OF DEFINITIONS

Part 6 Common Policy Definitions, is amended as follows:

A.    Item B. **Claim** is deleted in its entirety and replaced by the following:

**Claim** means for the purposes of Parts 1, 2, 3 and 5:

> 1.    Any of the following:
>
> a.    Any written demand for monetary or non-monetary relief (including injunctive); or
>
> b.    Any civil proceeding, including any appeals therefrom, commenced by the filing, notice or service of complaint, pleading, summons or similar document; or
>
> c.    Any criminal proceeding, including any appeals therefrom, commenced by the return of an indictment or the filing of the notice of charges or similar document; or
>
> d.    Any formal administrative judicial, regulatory or tribunal proceedings, including any proceedings before the Equal Employment Opportunity Commission or any similar governmental agency, commenced by the filing of notice of charges, formal investigative order, service of summons, subpoena or similar document; or

      e.      Any arbitration, mediation or similar alternative dispute resolution proceeding commenced by the receipt of a demand for such proceeding,

Against an **Insured** for a **Wrongful Act**; or

      2.      Any written request to toll or waive any statute of limitations applicable to any actual or potential suit or cause of action against the Insured.

However, **Claim** shall not include a labor or grievance proceeding pursuant to a collective bargaining agreement.

A **Claim** shall be considered made when the **Insured** first receives notice of the **Claim**.

Part 8, Common Policy Conditions of the 2016-2017 Policy includes Defense and Settlement and Notice and Claim Reporting Provisions:

III.     DEFENSE AND SETTLEMENT

     A.     The **Insured** and not the **Underwriter** shall have the responsibility to defend any **Claim**. However, the **Insured** shall have the right, as soon as practicable after a **Claim** is first made, to tender the defense of such **Claim** to the **Underwriter**. Upon written notice to the **Underwriter** of such election by the **Insured** and subject to the provisions of this Section III. DEFENSE AND SETTLEMENT, the **Underwriter** shall undertake and manage the defense of such **Claim**, even if such **Claim** is groundless, false, or fraudulent.

     B.     If the **Insured** has assumed the defense of a **Claim** pursuant to A. above, the **Underwriter** shall advance **Defense Costs** prior to the final disposition of a **Claim**. The **Insured** shall elect counsel of its choice subject to approval by the **Underwriter**, such approval shall not be unreasonably withheld. The **Underwriter** shall not be liable for **Defense Costs** incurred, settlements made or judgments admitted by the **Insured** without the **Underwriter's** prior written consent, which shall not be unreasonably withheld….

IV.    NOTICE/CLAIM REPORTING PROVISIONS

Notice hereunder shall be given in writing to the **Underwriter** at the following address:

> Philadelphia Insurance Companies
> One Bala Plaza, Suite 100
> Bala Cynward, Pennsylvania 19004
> Attention: Claims Department

The date of mailing shall constitute the date that such notice was given and proof of mailing shall be sufficient proof of notice. Any notice to the **Underwriter** shall specify the Part(s) of this Policy under which the notice is being given and shall be treated as notice only under such specified Part(s).

A.    In the event that a **Claim** is made against the **Insured** or a **Workplace Violence Act** occurs, the **Insured** shall, as a condition precedent to the obligations of the **Underwriter** under this Policy, give written notice of such **Claim** or **Workplace Violence Act** as soon as practicable to the **Underwriter** during this **Policy Period**, or, if applicable, during any **Extension Period**, but, not later than 60 days after the expiration date of this Policy or any **Extension Period**, if applicable.

B.    If during this **Policy Period** an **Insured** first becomes aware of any circumstances which may subsequently give rise to a **Claim** being made against any **Insured** for a specific alleged **Wrongful Act**, and as soon as practicable thereafter, but before the expiration or cancellation of this Policy, gives written notice to the **Underwriter** of the circumstances and the reasons for anticipating such a **Claim**, with the full particulars as to the **Wrongful Act**, dates and persons involved, than any **Claim** which is subsequently made against the **Insured** arising out of such **Wrongful Act** will be considered made during this **Policy Period**.

C.    All **Loss** arising out of the same **Wrongful Act** and all **Interrelated Wrongful Acts**, or the same or related **Workplace Violence Acts**, shall be deemed one **Loss** on account of one **Claim** or one **Workplace Violence Act**. Such **Claim** or

8

> **Workplace Violence Act** shall be deemed to be made or to have
> first occurred when the earliest of such **Claims** or **Workplace
> Violence Acts** were first made or first occurred.

21.     On January 26, 2017, PFH filed a Notice of Occurrence/Claim with PIIC
regarding an April 7, 2015 informal document request from the United States Attorney's Office
for the Western District of Arkansas directed to Alternative Opportunities, Inc. ("AO"), a
company which had thereafter been acquired by PFH on May 1, 2015, with respect to
documents relating to lobbying and grant activities. The Notice included a May 26, 2015 letter
from PFH's attorney providing the initial production of the documents requested. PIIC later
learned that a second informal document request from the United States Attorney's Office for
the Western District of Arkansas had been sent to PFH in June of 2016.

22.     Around that same time, PFH notified PIIC about a litigation hold/preservation
notice demand received by PFH with respect to a related investigation currently being
undertaken by the United States Attorney's Office for the Western District of Missouri.

23.     When asked for additional information about these investigations, PIIC was told
that the Arkansas federal investigation was focused on lobbyist Milton "Rusty" Cranford, who
was at one time a contract employee with AO, and Arkansas State Senator Jon Woods with
respect to the improper funneling of General Improvement Funds to a private college and other
entities in exchange for bribes.

24.     PIIC was also told that the litigation hold was the result of the grand jury
investigation out of the Western District of Missouri into former AO contractors, and that, as of
January 30, 2017, neither PFH nor AO were the identified target(s) of that investigation, but

that the investigation may be intended to assess the culpability of individuals who are or were a part of the company, or affiliated with it, with respect to the mishandling of non-profit funding.

25.     On March 21, 2017, PFH forwarded PIIC a grand jury records subpoena from the United States Attorney General's Office for the Western District of Arkansas.

26.     On March 22, 2017, PFH forwarded PIIC a grand jury records subpoena from the United States Attorney General's Office for the Western District of Missouri.

27.     The information provided as of March 2017 with respect to the federal investigations did not constitute a "claim" under the 2016-2017 PFH Policy.

28.     The informal document requests, litigation hold, and document subpoenas do not constitute a "written demand for … non-monetary relief" for purposes of Subsection 1.a. of the 2016-2017 PFH Policy's "claim" definition because the requests were not seeking relief, but rather, were seeking the production and/or non-destruction of documents.

29.     Moreover, even to the extent that the informal document requests, litigation hold, and document subpoenas could be considered a "written demand for … non-monetary relief," these requests were not seeking such relief against an "insured for a Wrongful Act" because the requests made clear that AO and/or PFH were not the current targets of the investigations and that at that point no specific wrongdoing had been attributed to AO, PFH, or any of its board members or employees.

30.     Likewise, at that time, there had been no criminal or civil proceedings commenced, or requests for arbitration, mediation, or similar alternative dispute resolution

proceedings, against PFH or its Board members or employees for purposes of Subsections 1.b., 1.c., and 1.e. of the 2016-2017 PFH Policy's "claim" definition.

31.     Finally, the informal document requests, litigation hold, and document subpoenas do not constitute a "formal administrative, judicial, regulatory or tribunal proceeding … commenced by the filing of notice of charges, formal investigative order, service of summons, subpoena, or similar document … [a]gainst an insured for a Wrongful Act" for purposes of Subsection 1.d. of the 2016-2017 PFH Policy's "claim" definition because the subpoenas were issued to request the production of documents, not to commence any type of formal proceeding against PFH or its Board members or employees. A grand jury is an investigative body, not a prosecutorial body, and therefore, the production of documents pursuant to a grand jury subpoena does not amount to the participation in the formal proceeding.

32.     Regardless, even if the issuance of document production subpoenas did amount to the commencement of a formal proceeding, the subpoenas referenced no "Wrongful Act" on the part of any insured, but rather, merely listed the types of documents sought.

33.     Accordingly, as of the receipt of the subpoenas at the end of March 2017, no "claim" had arisen within the meaning of the 2016-2017 PFH Policy so as to trigger coverage.

34.     However, the information provided with respect to the investigation and the subpoenas may be considered "notice of circumstances" of a "claim" for purposes of the Notice/Claim Reporting Provisions Subsection B. of the 2016-2017 PFH Policy.

35.    As such, on May 4, 2017, PIIC sent an Acknowledgement of Notice of Circumstances Letter to PFH explaining if the circumstances reported later ripened to a claim triggering coverage, PIIC would treat that claim as falling within the 2016-2017 PFH Policy, provided such claim was otherwise covered.

36.    On November 30, 2017, PFH forwarded PIIC a letter from the United States Attorney's Office for the Western District of Missouri dated October 26, 2017. This later stated that after its investigation it had determined that there is probable cause to believe that PFH and PFH executives and employees had committed offenses sufficient to warrant the initiation of federal criminal charges arising from years of unlawfully diverting millions of dollars from federal program funds. The letter went on to offer to discuss pre-indictment disposition of the allegations in lieu of an indictment.

37.    On December 6, 2017, PIIC sent PFH an Acknowledgement of Claim/Reservation of Rights letter acknowledging that the criminal indictment threatened in the October 26, 2017 letter amounted to a "claim" within the meaning of the 2016-2017 PFH Policy for purposes of triggering PIIC's duty to reimburse "defense costs" going forward, subject to the reservation of rights outlined in the letter and the Defense and Settlement Conditions found in Part 8 of the 2016-2017 PFH Policy.

WHEREFORE, Plaintiff Philadelphia Indemnity Insurance Company requests the Court to enter judgment in its favor and against Defendants and declare as follows:

a.    Coverage for the claim arising out of the Missouri and Arkansas federal criminal investigations was triggered under the 2016-2017 PFH Policy on

November 30, 2017, when PIIC first received notice of the threatened criminal

indictment against PFH and PFH directors and employees;

b.      PIIC has no duty to reimburse PFH or any Individual Insureds under the 2016-

2017 PFH Policy for "defense costs" incurred prior to November 30, 2017

arising out of the Missouri and Arkansas investigations;

c.      PIIC has no duty to reimburse PFH or any Individual Insureds under the 2016-

2017 PFH Policy for "defense costs" incurred without PIIC's prior written

consent arising out of the Missouri and Arkansas investigations;

d.      PIIC is entitled to its costs; and

e.      PIIC is entitled to any further relief this Court deems proper.

### COUNT II
### DECLARATORY JUDGMENT ON DEFENSE COSTS ASSOCIATED WITH AN INVESTIGATION INTO MEDICAID FRAUD BY THE ARKANSAS ATTORNEY GENERAL

38.      PIIC restates and incorporates by reference each and every allegation in the

above paragraphs as if fully set forth herein Count II of PIIC's Complaint.

39.      PFH has also sought to recover defense costs incurred as a result of an

investigation into Medicaid fraud conducted by the Arkansas Attorney General's Office that

began sometime in 2016.

40.      While PFH mention the investigation in July 2018, it made no claim for

coverage at that time and did not properly report the potential circumstances for a claim

under the terms of the PIIC policy until May 9, 2019, and did not provide information

demonstrating that a "claim" had arisen out of the investigation within the meaning of the applicable PIIC policy until May 28, 2019.

41.    As such, PIIC has agreed to reimburse "defense costs" for the Arkansas state Medicaid fraud investigation and any resulting indictments going forward from the May 28, 2019 notification date, within the parameters set by the PIIC policy.

42.    However, PIIC has declined to reimburse PFH for any "defense costs" incurred as a result of that investigation before May 28, 2019, the date on which PIIC was first properly notified of a "claim" against a PIIC insured within the meaning of the PIIC policy.

### The Insurance Policy

43.    PIIC issued a commercial lines policy to PFH for the period from May 1, 2017 to May 1, 2018, under Policy No. PHSD1243976 (the "2017-2018 PFH Policy"). The 2017-2018 PFH Policy has an extended reporting period which extends the time for reporting a claim first made during the policy period to May 1, 2021. A true and accurate copy of the 2017-2018 PFH Policy is attached hereto as Exhibit 2 and incorporated as if fully set forth herein.

44.    The 2017-2018 PFH Policy contains the following relevant provisions:

### Part 1

Not-for-Profit Organization Directors & Liability Insurance

(To be read in conjunction with the Common Policy Definitions, Exclusion, and Conditions Sections, Parts 6, 7, 8 below)

I.    INSURING AGREEMENTS

D.    The **Underwriter** will pay on behalf of the **Individual Insured**, **Loss** from **Claims** made against **Individual Insureds** during the

14

Policy Period (or, if applicable during the Extension Period), and reported to the **Underwriter** pursuant to the terms of this Policy, for **D&O Wrongful Acts**, except to the extent the **Organization** has indemnified the **Individual Insured** for such **Loss**.

E.   The **Underwriter** will pay on behalf of the **Organization**, **Loss** from **Claims** made against **Individual Insureds** during the **Policy Period** (or, if applicable, during the Extension Period), and reported to the **Underwriter** pursuant to the terms of this Policy, for **D&O Wrongful Acts**, if the **Organization** has indemnified such **Individual Insureds** for such **Loss**.

F.   The **Underwriter** will pay on behalf of the **Organization**, **Loss** from **Claims** made against the **Organization** during the **Policy Period** (or, if applicable, during the Extension Period), and reported to the **Underwriter** pursuant to the terms of this Policy, for a **D&O Wrongful Act**.

II.   DEFINITIONS

A.   **D&O Wrongful Act** means any actual or alleged:

1.   Act, error, omission, misstatement, misleading statement, neglect, breach of duty or Personal & Advertising Injury committed or attempted by an Individual Insured in his/her capacity as an Individual Insured; or by the Organization ….

**Part 6**

Common Policy Definitions

…

D.   **Defense Costs** means:

1.   Any reasonable and necessary legal fees and expenses incurred in the defense of a Claim, whether by the Insured with the Underwriter's consent or directly by

the Underwriter in the investigation, adjustment, defense and appeal of a Claim ….

The 2017-2018 Policy's Pro-Pak Elite Enhancement Missouri contains the following amended definition:

IV.     AMENDMENT OF DEFINITIONS

Part 6 Common Policy Definitions, is amended as follows:

A.     Item B. **Claim** is deleted in its entirety and replaced by the following:

**Claim** means for the purposes of Parts 1, 2, 3 and 5:

1.     Any of the following:

　　a.     Any written demand for monetary or non-monetary relief (including injunctive); or

　　b.     Any civil proceeding, including any appeals therefrom, commenced by the filing, notice or service of complaint, pleading, summons or similar document; or

　　c.     Any criminal proceeding, including any appeals therefrom, commenced by the return of an indictment or the filing of the notice of charges or similar document; or

　　d.     Any formal administrative judicial, regulatory or tribunal proceedings, including any proceedings before the Equal Employment Opportunity Commission or any similar governmental agency, commenced by the filing of notice of charges, formal investigative order, service of summons, subpoena or similar document; or

　　e.     Any arbitration, mediation or similar alternative dispute resolution proceeding commenced by the receipt of a demand for such proceeding,

16

Against an **Insured** for a **Wrongful Act**; or

2.     Any written request to toll or waive any statute of limitations applicable to any actual or potential suit or cause of action against the Insured.

However, **Claim** shall not include a labor or grievance proceeding pursuant to a collective bargaining agreement.

A **Claim** shall be considered made when the **Insured** first receives notice of the **Claim**.

The 2017-2018 Policy includes Defense and Settlement and Notice and Claim Reporting Provisions as follows:

III.     DEFENSE AND SETTLEMENT

A.     The **Insured** and not the **Underwriter** shall have the responsibility to defend any **Claim**. However, the **Insured** shall have the right, as soon as practicable after a **Claim** is first made, to tender the defense of such **Claim** to the **Underwriter**. Upon written notice to the **Underwriter** of such election by the **Insured** and subject to the provisions of this Section III. DEFENSE AND SETTLEMENT, the **Underwriter** shall undertake and manage the defense of such **Claim**, even if such **Claim** is groundless, false, or fraudulent.

B.     If the **Insured** has assumed the defense of a **Claim** pursuant to A. above, the **Underwriter** shall advance **Defense Costs** prior to the final disposition of a **Claim**. The **Insured** shall elect counsel of its choice subject to approval by the **Underwriter**, such approval shall not be unreasonably withheld. The **Underwriter** shall not be liable for **Defense Costs** incurred, settlements made or judgments admitted by the **Insured** without the **Underwriter's** prior written consent, which shall not be unreasonably withheld….

IV.     NOTICE/CLAIM REPORTING PROVISIONS

Notice hereunder shall be given in writing to the **Underwriter** at the following address:

Philadelphia Insurance Companies
One Bala Plaza, Suite 100
Bala Cynward, Pennsylvania 19004
Attention: Claims Department

The date of mailing shall constitute the date that such notice was given
and proof of mailing shall be sufficient proof of notice. Any notice to
the **Underwriter** shall specify the Part(s) of this Policy under which the
notice is being given and shall be treated as notice only under such
specified Part(s).

A.   In the event that a **Claim** is made against the **Insured** or a
**Workplace Violence Act** occurs, the **Insured** shall, as a
condition precedent to the obligations of the **Underwriter** under
this Policy, give written notice of such **Claim** or **Workplace
Violence Act** as soon as practicable to the **Underwriter** during
this **Policy Period**, or, if applicable, during any **Extension
Period**, but, not later than 60 days after the expiration date of
this Policy or any **Extension Period**, if applicable.

B.   If during this **Policy Period** an **Insured** first becomes aware of
any circumstances which may subsequently give rise to a **Claim**
being made against any **Insured** for a specific alleged **Wrongful
Act**, and as soon as practicable thereafter, but before the
expiration or cancellation of this Policy, gives written notice to
the **Underwriter** of the circumstances and the reasons for
anticipating such a **Claim**, with the full particulars as to the
**Wrongful Act**, dates and persons involved, than any **Claim**
which is subsequently made against the **Insured** arising out of
such **Wrongful Act** will be considered made during this **Policy
Period**.

C.   All **Loss** arising out of the same **Wrongful Act** and all
**Interrelated Wrongful Acts**, or the same or related **Workplace
Violence Acts**, shall be deemed one **Loss** on account of one
**Claim** or one **Workplace Violence Act**. Such **Claim** or
**Workplace Violence Act** shall be deemed to be made or to have
first occurred when the earliest of such **Claims** or **Workplace
Violence Acts** were first made or first occurred.

45.     The 2017-2018 PFH Policy's policy period ended on May 1, 2018.

46.     PIIC issued no renewal policies to PFH. However, the 2017-2018 PFH Policy has an extended reporting period that runs until May 1, 2021.

47.     While PFH mention the investigation in July 2018, it made no claim for coverage at that time. On April 2, 2019, PFH informed PIIC that it intended to make a claim for coverage for the Arkansas Medicaid fraud investigation under the 2017-2018 PFH Policy and was preparing the paperwork to do so.

48.     On May 9, 2019, PFH filed a Notice of Occurrence/Claim with PIIC indicating that it was currently under investigation by the Arkansas Attorney General's Office for Medicaid fraud. The Notice provided no details or information about the investigation other than the name of the law firm that had been representing PFH throughout the course of the investigation.

49.     On May 17, 2019, PIIC informed PFH that the Notice was insufficient under the terms of the 2017-2018 Policy's notice provisions to review the Arkansas investigation for coverage, and that further information would need to be provided to determine whether the investigation amounted to a covered claim under the 2017-2018 Policy.

50.     On May 28, 2019, PFH forwarded copies of records subpoenas issued by the Arkansas Attorney General's Office on January 1, 2018, March 27, 2018, April 2, 2018, May 17, 2018, June 1, 2018, December 18, 2018, and January 5, 2018, as well as a April 2, 2018 letter from the Arkansas Attorney General's Office threatening legal action against PFH if a settlement could not be reached.

51.     Upon receipt of this information, PIIC determined that the threatened legal action against PFH amounted to a "claim" that was made against PFH during the 2017-2018 Policy period.

52.     However, because the "claim" was not properly reported to PIIC until May 28, 2019, PIIC's coverage, and thereby its obligation to reimburse covered "defense costs," as provided for in the Defense and Settlement Conditions found in Part 8 of the 2016-2017 PFH Policy, was not triggered until that date.

WHEREFORE, Plaintiff Philadelphia Indemnity Insurance Company requests the Court to enter judgment in its favor and against Defendants and declare as follows:

a.      Coverage for the claim arising out of the Arkansas Attorney General's Office into Medicaid fraud was triggered under the 2017-2018 PFH Policy on May 28, 2019, when PIIC first received proper notice of threatened legal action against PFH and PFH directors and employees;

b.      PIIC has no duty to reimburse PFH or any Individual Insureds under the 2017-2018 PFH Policy for "defense costs" incurred prior to May 28, 2019 arising out of the Arkansas Attorney General's Office into Medicaid fraud investigation;

c.      PIIC has no duty to reimburse PFH or any Individual Insureds under the 2017-2018 PFH Policy for "defense costs" incurred without PIIC's prior written consent arising out of the Arkansas Attorney General's Office into Medicaid fraud investigation;

d.      PIIC is entitled to its costs; and

e.     PIIC is entitled to any further relief this Court deems proper.

Respectfully submitted,

**BROWN & JAMES, P.C.**

*/s/ Steven H. Schwartz*
Steven H. Schwartz          #36436 Mo.
sschwartz@bjpc.com
Teresa M. Young            #53427 Mo.
tyoung@bjpc.com
800 Market Street, Suite 1100
St. Louis, MO 63101-2501
314.421.3400
Fax: 314.421.3128

**Attorneys for Plaintiff Philadelphia**
**Insurance Indemnity Companies**

#21186581

21